MARSHALL *et ux.* v. RUDDICK *et al.*

1. Mortgage: FORECLOSURE: JUNIOR INCUMBRANCER: TENDER. To entitle a junior incumbrancer to be subrogated to the rights of a senior mortgagee, under section 3665 of the Revision, it is sufficient if the junior incumbrancer tender to the mortgagee the amount secured by his mortgage, with interest and costs *before* the foreclosure sale, though the amount tendered be not accepted until *after* such sale.

2. Homestead: CHANGE OF. A new homestead, purchased with the proceeds of the old one, is exempt to the same extent as the latter would have been.

*Appeal from General Term, First District (Lee County).*

MONDAY, APRIL 11.

IN February, 1856, S. T. and G. M. Marshall executed a mortgage to Patterson upon certain lots in block 30, in the city of Keokuk, to secure $3,500. Reddington, afterward becoming the owner of these lots, made a mortgage thereon to Wilsey, who assigned the same to the Ruddicks. In a proceeding to foreclosue this latter mortgage, Patterson intervened, and on the 3d of June, 1861, his mortgage was, by proper decree, held to be paramount to that held by the Ruddicks, and it was directed that from the proceeds of the sale he should first be paid, etc. The present defendants (Ruddicks), after this, commenced an action against the Marshalls, claiming that they *at once* paid Patterson the sum thus adjudged him upon his prior mortgage, and asking judgment for the same. The defendants therein demurred to the petition, the demurrer was overruled, and plaintiffs then had judgment, and this was affirmed in this court. 23 Iowa, 243.

An execution was issued upon this judgment, levied upon certain lots in block 4, in "Addition to Keokuk;"

thereunder they were sold, and a certificate of sale issued in due form.

Plaintiffs (S. T. Marshall and wife) thereupon commenced this proceeding in equity to set aside this judgment, and also the sale of said lots under said execution. Upon the hearing, plaintiffs' bill was sustained as to the sale, but dismissed as to the judgment. This judgment was sustained at the General Term, and both parties appeal to this court.

*R. P. Lowe* for the plaintiffs.

*Gilmore & Anderson* for the appellants.

WRIGHT, J.— Plaintiffs appeal from the refusal of the court to declare the judgment in favor of the Ruddicks against the Marshalls, to be null and void. And here the ground of complaint is this: In that action it was claimed that the money was paid to Patterson forthwith upon the rendition of the decree of the foreclosure proceeding; that hence, under the statute, the junior mortgagees (Ruddicks), were subrogated to all the rights of Patterson, and, among others, to be treated as creditors of the mortgagees from the date of the first mortgage, or from February, 1856. Plaintiffs now insist that the Ruddicks did not pay this money until *after* the sale of the mortgaged property under execution, and that hence, under the statute (Rev. § 3665), their rights would not and could not antedate the payment; and, indeed, they insist that this payment in Patterson's favor was made by the sale of the property, and that the Ruddicks therefore paid nothing, and should have recovered nothing.

The difficulty in this part of plaintiffs' case is twofold. The fact is, they had their day in court. There was no surprise, no fraud, no mistake, but a full knowledge

*Margin note:* 1. MORTGAGE: foreclosure: junior incumbrancer: tender.

of all the facts, or, if not possessed of this knowledge, they took no step to obtain time in order to acquire it, and it is too late for them now to have the question re·investigated. Their attention, they admit, was called to the allegation as to the *time* of payment; they made some search, but ·nothing amounting to diligence, and then abandoned the defense. Something is demanded at the hands of parties, if they would ask the vacation of a solemn judgment of a court, having undoubted jurisdiction of the parties and subject-matter.

But, in the *second* place, the testimony even now is in full accord with the proposition that this money was paid *before* the sale. At all events, we are inclined to believe that the money was *tendered* and not accepted, either because the judgment in Patterson's favor was believed to be too small, or the decree itself, in its other parts, was deemed erroneous. The testimony shows that Patterson talked of appealing, or of taking steps to set aside the decree, and that he did not abandon this until about the time he accepted the money from the clerk, where it was deposited. If duly tendered before, the Ruddicks would stand equally as well as though the money had been actually accepted.

As to plaintiffs' appeal, therefore, the judgment must remain undisturbed.

II. The lots in block 4, sold under the execution, constitute plaintiffs' homestead. The defendants, however, say, that, they being subrogated to the rights of Patterson, their debt accrued in February, 1856, and prior to the occupation of the homestead, and it is hence liable. To this plaintiffs say the debt accrued January 3, 1861, the time at which defendants were entitled by their judgment to an assignment, under the law, of the old mortgage. If this is not correct, however, then they claim that the property belongs to the wife, that it was purchased in her

own name, with her own means, and hence is not liable to this judgment against the husband. And then, in the *third* place, it is maintained that the property was purchased with the proceeds of the old homestead; that, in fact, there was in law but a change of homesteads; that the old or original homestead was not liable to this debt, and that, hence, this one is not.

The court below found that the cause of action upon which the judgment was based did not accrue until January 3, 1861, and that this homestead (acquired and occupied before that time) was not liable thereon. A portion of this court, to say no more, would hesitate long before concurring in this view, and, hence, in affirming this judgment upon this ground. We unite, however, in the conclusion that the judgment is right upon the third ground maintained by plaintiffs.

In our judgment, the money arising from the sale of the first homestead was used to purchase and build the 2. HOMESTEAD: present one. And if the first was exempt from change of. this debt, then is this. (There is no controversy as to values.) See *Pearson* v. *Minturn*, 18 Iowa, 36; *Sargent* v. *Chubbuck*, 19 id. 37.

But defendants insist that the *old* homestead was not acquired until after February, 1856, or after this debt was originally contracted. In this, however, they are not sustained by the testimony. Marshall and wife held an interest in the present homestead by at least two deeds made prior to 1856; as also under a tax title acquired in November, 1853. And that they had *possession* of it as early as 1850 is well established. The fact that he, after 1856, bought in other titles, or removed what was regarded clouds or liens thereon, is of no moment. If he held, occupied and used the property under a claim of title, *before* February, 1856, the perfection of his title

*after* that time would not make it liable for intervening debts.

And it therefore follows, that this part of the decree must stand affirmed, each party to pay half the costs of this appeal.

Affirmed.